**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

2525 RAMONA, LLC and CHULA VISTA HOLISTIC CENTER, INC.,

Plaintiffs,

v.

STARBUCKS CORPORATION,

Defendant.

Case No. 26-cv-02733-BAS-SBC

**ORDER:**

**(1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (ECF No. 5);**

**(2) GRANTING PLAINTIFFS' MOTION TO DROP CHULA VISTA HOLISTIC CENTER, INC. AS A PARTY (ECF No. 10)**

Presently before the Court is Defendant Starbucks Corporation's Motion to Dismiss ("MTD") (ECF No. 5). For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss. (ECF No. 5.) More specifically, the Court **GRANTS** Defendant's Motion to Dismiss Counts I (Breach of Contract), II (Breach of Covenant of Good Faith and Fair Dealing), and IV (Unjust Enrichment), and **DISMISSES** them **WITHOUT PREJUDICE**. (ECF No. 1-4.) However, the Court **DENIES** Defendant's Motion to Dismiss Count III (Fraudulent Inducement). (ECF No.

5.) Should Plaintiffs wish to file an amended complaint and/or motion for assignment, they must do so by **<u>September 16, 2026</u>**.

The Court also **GRANTS** Plaintiffs' motion to drop Plaintiff Chula Vista Holistic Center, Inc. as a party. (ECF No. 10.) The Clerk of Court is **DIRECTED** to terminate Chula Vista Holistic Center, Inc. as a Plaintiff on the docket and update the case caption accordingly.

## I. BACKGROUND

Plaintiffs 2525 Ramona, LLC ("Ramona") and Chula Vista Holistic Center, Inc. ("CVHC") sued Defendant Starbucks Corporation in the San Diego Superior Court regarding two commercial leases: the "CV Lease" (Compl., ECF No. 1-4, Ex. 1) and the "Santee Lease" (Compl., Ex. 2).

Plaintiffs brought causes of action for: (1) Count I (Breach of Contract); (2) Count II (Breach of Covenant of Good Faith and Fair Dealing); (3) Count III (Fraudulent Inducement); and (4) Count IV (Unjust Enrichment). (*Id.*) Defendant removed the case to this Court. (*Id.*)

Plaintiffs are owned and controlled by the same managing member, Fred Jajou ("Jajou"). (MTD, ECF No. 5-1, at 9:26–10:1.) For years, Jajou acquired and developed commercial real estate into new restaurant locations for Defendant. (Compl. ¶ 17.) Jajou would enter into a letter of intent (LOI) with Defendant to set lease terms, enter into a lease agreement under substantially the same terms, then construct the project. (*Id.*) Once completed, Jajou could refinance the underlying mortgage for the property or sell the property to an investor seeking a cash-flowing property with an established tenant. (*Id.*)

CVHC purchased a property in Chula Vista, California ("CV Property") and executed a commercial lease agreement—the CV Lease—with Defendant for the CV Property on January 12, 2022. (*Id.* ¶ 15.) Ramona purchased a property in Santee, California ("Santee Property") and executed a commercial lease agreement—the Santee Lease—with Defendant for the Santee Property on July 7, 2023. (*Id.* ¶ 16.)

Allegedly during the course of drafting and executing both the CV Lease and Santee Lease (collectively, the "Leases"), Defendant "made an unapproved, unnoticed change" to the respective "Assignment" provisions, adding "Tenant shall be released from all Lease obligations and future liability any assignment or sublease," to the final executed versions of the Leases. (*Id.* ¶¶ 21, 22, 23, 28, 29.) Under prior leases, Defendant could assign its rights under the respective lease but would remain obligated to the tenant's performance. (*Id.* ¶ 17.)

In February 2024, Plaintiffs discovered the additional "unapproved" language in the CV Lease and notified Defendant's legal department. (*Id.* ¶¶ 23, 37, 46, 71.) Defendant's legal department acknowledged the error, "promised to fix it," and did not correct the error—even with Plaintiffs' repeated follow-up requests. (*Id.* ¶ 82.)

As Plaintiffs discovered the "unapproved" language in the CV Lease, they realized the same language had been added to the Santee Lease as well. Ramona exchanged emails with Defendant, urging it to correct the "wrongfully swapped" language, but Defendant refused to make the changes without additional consideration. (*Id.* ¶ 32.)

As a result of the "unapproved" language, CVHC was unable to sell or refinance the CV Property. The CV Property went into foreclosure on February 25, 2025, allegedly causing losses exceeding $2.5 million; and the Santee Property faced near-foreclosure. (*Id.* ¶¶ 47, 90.) Plaintiffs allegedly could not refinance or sell the Santee Property because lenders and buyers would not proceed under the altered lease terms. (*Id.* ¶¶ 17–18, 86, 89–91.) Plaintiffs expended construction resources from 2023 to early 2025 and faced delays in construction allegedly due to an inability to secure lending based on the CV Lease and Santee Lease terms. (*Id.* ¶¶ 35–36.) On December 9, 2025, Defendant issued a Notice of Termination of the Santee Lease based on Plaintiff Ramona's failure to deliver on the construction timeline specified in the Santee Lease. (Compl. ¶¶ 34, 49, 58, 75, 84.)

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the ... laws in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

When a court dismisses a complaint under Rule 12(b)(6), it must then decide whether to grant leave to amend. Under Rule 15(a), leave to amend "shall be freely given when justice so requires." However, the court may deny leave to amend for reasons of "repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### B. Rule 21

Rule 21, which addresses "Misjoinder and Nonjoinder of Parties," states that "the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. When deciding motions under Rule 21, courts "apply the same standard of liberality afforded to motion to amend pleadings under Rule 15." *Rodriguez v. City of Phoenix*, No. CV-11-01992-PHX-JAT, 2014 WL 1053602, at *6 (D. Ariz. Mar. 19, 2014) (citations omitted); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2016 WL 948874, at *2 (N.D. Cal. Mar. 14, 2016) ("Courts addressing motions under Rule 21 typically review the request under the framework of Rule 15(a)."). Under Rule 15, the court has discretion to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a). In making this determination, courts consider undue delay, prejudice to the opposing party, futility of the amendment, and bad faith by the movant. *Foman*, 371 U.S. at 182.

## III. ANALYSIS

### A. Choice of Law

The Court finds that California law applies to Plaintiffs' breach of contract and contract-related claims. "When a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling substantive law." *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). "Under California's choice of law rules, California will apply its own rules of decision unless a party invokes the law of a foreign state that 'will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it.' " *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009) (quoting *Hurtado v. Superior Ct.*, 11 Cal. 3d 574, 581 (1974)). "[T]he party seeking to invoke the law of a jurisdiction other than California bears the burden of proof on the choice-of-law issue." *Essex Partners Ltd. v. Merch. Cash & Cap.*, No. CV1103366CASMRW, 2011 WL 13123326, at *3 (C.D. Cal. Aug. 1, 2011) (citing *Zinser*

*v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001)). In addition, the Parties both apply California law in their briefing. (*See generally* Compl., MTD.)

**B. Motion to Drop CVHC as Party (ECF No. 10)**

Since Defendant does not oppose Plaintiffs' Motion to drop CVHC as a party under Rule 21 (ECF Nos. 10, 13), the Court does not find any undue delay, prejudice to the opposing party, futility of the amendment, or bad faith by the movant that would militate against granting the request to drop CVHC. *See Foman*, 371 U.S. at 182. The Court **GRANTS** Plaintiffs' request to drop CVHC as a party.[1] (ECF No. 10.)

**C. Count I (Breach of Contract)**

The elements of a breach of contract cause of action are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages. *First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (Cal. Ct. App. 2001). The essential elements of a contract include: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration. *See* Cal. Civ. Code § 1550.

Plaintiffs claim two valid contracts exist in the present action. First, Plaintiffs allege the CV Lease and the Santee Lease are valid and enforceable contracts with Defendant. (Compl. ¶ 44.)

Second, accepting that the CV Lease and Santee Lease are valid contracts, Plaintiffs claim Defendant breached the CV Lease and Santee Lease by inserting non-mutually agreed upon language in the "Assignment" section of the agreements that "removed all risk and obligation from Defendant" prior to signing. (Compl. ¶¶ 17, 21, 22, 23, 28, 29, 46, 50.) Plaintiffs also allege that Defendant's failure to modify the Leases after signing and "relying on incorrect terms to terminate the Santee Lease" constitutes breach of the Leases. (Compl. ¶ 49.)

[1] Although Parties debate the issue of whether CVHC's interests in the present lawsuit can be assigned to Plaintiff Ramona (ECF Nos. 10, 13), there is no motion for assignment or substitution under Rule 25(c)) presently before the Court. Therefore, the Court declines to rule on the issue at this time.

However, as Defendant argues, Plaintiffs have not pointed to a specific provision of either the CV Lease or the Santee Lease that was breached in their Complaint (*see* MTD, ECF No. 5-1, at 15:20–17:8). "To properly plead breach of contract, '[t]he complaint must identify the specific provision of the contract allegedly breached by the defendant.' " *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017) (citing *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 930 (N.D. Cal. 2012)).

Moreover, though Plaintiffs claim that Defendant breached the Parties' "actual, bargained-for, mutually approved written terms of the [CV Lease and Santee Lease]" (Compl. ¶¶ 46–47, 56), "Plaintiffs' argument that Defendants breached an implicit term of the agreement when the explicit terms of the agreement state the opposite contradicts a basic principle of contract law: the form of a written agreement supersedes contemporaneous oral negotiations." *Koochakkhani v. Cap. One*, No. 19-CV-06412-SK, 2020 WL 13532959, at *5 (N.D. Cal. May 15, 2020); *see also Sullivan v. Mass. Mut. Life Ins. Co.*, 611 F.2d 261, 264 (9th Cir. 1979) ("Under California law, a written contract presumptively supersedes all prior or contemporaneous oral agreements concerning the subject matter of the written contract. *See* Cal. Civ. Code § 1625; Cal. Civ. Proc. Code § 1856."). Indeed, there is nothing in the written terms of either of the Leases requiring Defendant to modify the Leases' terms either before or after Parties have signed. In addition, Plaintiffs do not seek to reform or rescind either of the Leases. (*See generally* Compl.)

Lastly, Plaintiffs claim Defendant violated the Santee Lease when Defendant issued a Notice of Termination of the Santee Lease based on Plaintiff Ramona's failure to deliver on the construction timeline specified in the Santee Lease. (Compl. ¶¶ 34, 49, 58, 75, 84.) However, the explicit terms of the Santee Lease permits Defendant to terminate the Santee Lease upon Plaintiff's default (including the construction timeline). (*See* Santee Lease § 14.3(z).)

Thus, the Court **GRANTS** Defendant's Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' claim for breach of contract (Count I). (ECF No. 5.)

**D. Count II (Breach of Covenant of Good Faith and Fair Dealing)**

The implied covenant of good faith and fair dealing is tied to an existing specific contractual obligation—it is well established that "the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 826 P.2d 710, 727 (Cal. 1992); *accord Lewis v. Google LLC*, 461 F. Supp. 3d 938, 961 (N.D. Cal. 2020). Moreover, the implied covenant of good faith and fair dealing cannot require a party to go beyond the terms of a contract and cannot contradict the express terms. *See Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015) ("[I]f defendants were given the right to do what they did by the express provisions of the contract there can be no breach." (quoting *Carma Devs.*, 826 P.2d at 728)).

Here, Plaintiffs allege the same conduct that underlies their breach of contract claim also underlies their breach of covenant of good faith and fair dealing claim (*see* Compl. ¶¶ 52–62). Since Plaintiffs have failed to allege that Defendant has breached any terms of the Leases through its alleged conduct, *supra* § III.C, Plaintiffs have also failed to allege a breach of implied covenant of good faith and fair dealing. In particular, interpreting the Santee Lease to restrict Defendant's remedy of lease termination under Section 14.3(z) of the Santee Lease upon Plaintiffs' delayed premises delivery would directly contradict the express terms of the contract. *See Carma Devs.*, 826 P.2d at 728.

Thus, the Court **GRANTS** Defendant's Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' claim for breach of covenant of good faith and fair dealing (Count II).

**E. Count III (Fraudulent Inducement)**

Under California law, the elements of a fraudulent inducement claim parallel those of all fraud claims and consist of: (1) "misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud

(*i.e.*, to induce reliance); (4) justifiable reliance; and (5) resulting damage." *Dhital v. Nissan N. Am., Inc.*, 84 Cal. App. 5th 828, 840–41 (Cal. Ct. App. 2022).

In addition to pleading the above elements, claims for fraudulent inducement in federal court must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019). Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake," though "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The allegations must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

"Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). In the case of an omission, the "plaintiff must set forth an explanation as to why [the] omission complained of was false and misleading[.]" *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 932 (N.D. Cal. 2013) (internal quotations omitted). And "to plead the circumstances of omission with specificity, plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information." *Eisen v. Porsche Cars N. Am., Inc.*, 2012 WL 841019, at *3 (C.D. Cal. Feb. 22, 2012). "Still, it is clear that a plaintiff in a fraudulent concealment suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim. Because such a plaintiff is alleging a failure to act instead of an affirmative act, the plaintiff cannot point out the specific moment when the defendant failed to act. So, a fraud by omission or fraud by concealment claim can succeed without the same level of specificity required by a normal fraud claim." *Baggett v. Hewlett-*

*Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007) (internal quotations and citations omitted).

Here, Plaintiffs allege Defendant fraudulently induced them to enter into both the CV Lease and the Santee Lease by "presenting incorrect leases for execution." (Compl. ¶ 76.) Plaintiffs allege that "[i]n or around February 2024, Plaintiffs discovered the Leases executed by Defendant were not the final version[s] approved by both Plaintiffs." (Compl. ¶ 71.) Then, "Plaintiffs' legal counsel notified Defendant's legal department of the discrepancy. Defendant's counsel acknowledged the mistake and represented that Defendant would correct the error." (*Id.* ¶ 72.)

As a threshold matter, the Court finds Plaintiffs meet the Rule 9(b) standard. The Court construes Plaintiffs' fraudulent inducement claim as one of fraudulent concealment for purposes of Rule 9(b)—since the alleged fraud is Defendant's failure to disclose a material change to the Leases prior to the final signing. *See Friche v. Hyundai Motor Am.*, No. SACV2101324CJCADSX, 2022 WL 1599868, at *4 (C.D. Cal. Jan. 28, 2022) (construing plaintiff's claim as fraudulent omission where "[t]he crux of [p]laintiff's theory of fraud . . . is that 'none of the[ ] sources' that Plaintiff and his family reviewed in researching the Kona EV that touted its 258-mile range 'disclosed anything about the additional risks of fire caused by the increase in charging capacity' or 'the defect in [the Kona EV's] battery causing a lower range for a single charge.' ").

Plaintiffs allege "who" made the misleading statement, because they "at a minimum identify [Defendant's legal department's] titles and/or job responsibilities." *See UMG Recordings, Inc. v. Glob. Eagle Ent.*, 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015). Plaintiffs also allege "when" the misrepresentation was made (February 2024), and "how" Defendant failed to disclose its changes to the Leases' terms prior to sending them to Plaintiffs for final approval. (Compl. ¶¶ 71–72.) The Court finds this to be sufficient to meet the Rule 9(b) standard for fraudulent omission.

Further, Plaintiffs properly allege the elements for fraudulent inducement—since they state a misrepresentation (*i.e.*, nondisclosure of changes in contract), knowledge of

falsity and intent to defraud (*i.e.*, refusal to change terms of Leases after initial agreement), justifiable reliance (*i.e.*, Plaintiffs signing the Leases), and resulting damage (*i.e.*, inability to sell or refinance the relevant properties, and resulting forced foreclosure of CV Property and forced near-foreclosure of Santee Property—allegedly causing millions of dollars of losses) (Compl. ¶¶ 21, 22, 23, 28, 29, 47, 71–72, 90). *See Dhital*, 84 Cal. App. 5th at 840–41. Thus, the Court **DENIES** Defendant's Motion to Dismiss Plaintiffs' claim for fraudulent inducement (Count III).

### F. Count IV (Unjust Enrichment)

Where "the parties have a contract," there "cannot be a separate claim for unjust enrichment." *See Wright v. Charles Schwab & Co., Inc.*, No. 20-cv-05281-LB, 2020 WL 6822887, at *4 (N.D. Cal. Nov. 20, 2020) (granting motion to dismiss plaintiff's unjust enrichment claim where plaintiff had alleged the existence of a contract); *Gardiner v. Walmart, Inc.*, No. 20-CV-04618-JSW, 2021 WL 4992539, at *8 (N.D. Cal. July 28, 2021) (same) (citing *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389–90 (Cal. Ct. App. 2012)).

Plaintiffs' unjust enrichment claim is entirely based on the Leases executed between the Parties (Compl. ¶¶ 80–91)—which Plaintiffs themselves state are "valid and enforceable" contracts (*id.* ¶¶ 44, 53). In addition, as mentioned *supra* § III.C, Plaintiffs do not seek to either reform or rescind the Leases. Thus, the Court **GRANTS** Defendant's Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' claim for unjust enrichment (Count IV).

## IV. CONCLUSION

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss. (ECF No. 5.) More specifically, the Court **GRANTS** Defendant's Motion to Dismiss Counts I (Breach of Contract), II (Breach of Covenant of Good Faith and Fair Dealing), and IV (Unjust Enrichment), and **DISMISSES** them **WITHOUT PREJUDICE**. (ECF No. 1-4.) However, the Court **DENIES** Defendant's Motion to Dismiss Count III (Fraudulent Inducement). (ECF No. 5.) Should Plaintiffs

wish to file an amended complaint and/or motion for assignment, they must do so by **September 16, 2026**.

The Court also **GRANTS** Plaintiffs' motion to drop Plaintiff Chula Vista Holistic Center, Inc. as a party. (ECF No. 10.) The Clerk of Court is **DIRECTED** to terminate Chula Vista Holistic Center, Inc. as a Plaintiff on the docket and update the case caption accordingly.

**IT IS SO ORDERED.**

**DATED: August 28, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**